IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Brett M., | ) |
|     *Plaintiff*, | ) ) ) |
| v. | ) Case No. 3:22-cv-50044 ) ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | ) ) ) |
|     *Defendant*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brett M. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying him disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

In March 2018, Plaintiff filed an application for disability insurance benefits alleging a disability beginning on September 12, 2014, because of posterior tibial tendon dysfunction and blood clots. R. 380. He was 36 years old on his alleged onset date. Plaintiff last worked at Auto Zone as a parts sales manager. He was working approximately 36-40 hours per week until his alleged onset date when he reduced his hours to 8 hours per week due to pain in his ankles caused by his bilateral ankle deformity. In 2016, Plaintiff further reduced his hours to 4 hours per week, and in July 2020 he completely stopped working. Despite the use of fentanyl and Norco, Plaintiff continued to complain of disabling ankle pain.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 5.

At a remote hearing in June 2021,[2] an administrative law judge (ALJ) heard testimony from medical expert Dr. Jared Frazin, M.D., and a vocation expert. The ALJ issued a decision in July 2021, finding that Plaintiff was not disabled. R. 20-29. The ALJ found that Plaintiff had the following severe impairments: obesity, bilateral posterior tibial tendon dysfunction, and hypertension. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except he cannot operate foot controls; he can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; he cannot balance, walk on uneven surfaces, or climb ladders, ropes, or scaffolds; and the claimant cannot have exposure to unprotected heights, dangerous moving machinery, or pulmonary irritants.

R. 24. The ALJ determined that Plaintiff could not perform his past relevant work as a parts manager because it was medium work as performed by Plaintiff and light work as generally performed. However, the ALJ found that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, namely sedentary, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on December 22, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

---

[2] An initial remote hearing was held in November 2019 where Plaintiff testified. R. 66-105. The hearing was continued because the testifying medical expert requested additional information regarding Plaintiff's blood clot condition.

support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that remand is required because the ALJ failed to fully develop the record by not ordering a consultative examination to opine on his ankle deformity and improperly relied on the testifying medical expert's opinion over his treating physician's opinions that he could not perform full-time sedentary work.[3] Because the Court finds that the ALJ's evaluation of the testifying medical expert's opinion requires a remand, it will address this issue first.

In determining Plaintiff's RFC, the ALJ relied on the opinion of testifying medical expert Dr. Frazin, a board-certified physician in internal medicine and emergency medicine. Dr. Frazin testified that Plaintiff had posterior tibial tendon dysfunction of both ankles along with Achilles' tendon contracture that has resulted in the deformity of his ankles and feet. R. 41. Plaintiff also suffered from obesity with a BMI of 45.3. However, Dr. Frazin found that Plaintiff had the RFC to perform sedentary work with additional restrictions. He found that Plaintiff could stand and walk for 2 hours and sit for 6 hours in an 8-hour workday, occasionally use foot controls, climb

---

[3] In his opening brief, Plaintiff also argues that the ALJ erred in relying on the vocational expert's testimony regarding job numbers. However, Plaintiff abandons this issue by failing to respond to the Commissioner's arguments in his reply brief. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in waiver).

3

stairs and ramps, balance, stoop, kneel, crouch, and crawl, but he could not climb ropes, ladders, or scaffolds or have exposure to hazardous machinery or unprotected heights. R. 42. In response, the ALJ asked Dr. Frazin to "cite references in [Plaintiff's] record that would support your opinion." R. 42. Dr. Frazin testified as follows:

> So going back to 2013, [4]F, page 5, podiatrist prescribed bilateral ankle braces. He was noted to have antalgic gait, unable to do heel – heel raise. 4F, page 1, 8/8/13, noted to have right posterior tibial tendon dysfunction Stage 3, fitted with braces. 4F, page 10, 6/17/13, podiatrist … again bilateral ankle pain more on the right than on the left; had been working 7 to 11 hours a day; physical exam BMI 42.82, antalgic gait, impaired single-leg balance, no assistive devices; exam, subluxation of the tail and radicular joint; collapsing of the arch X-ray on the right shows collapsing of the arch and lateral impingement; X-ray on the left showed a normal modus plan for bracing. And then 4F, page 17 in 2013, MRI of the right ankle showed – showed synovitis and edema. And primary care visit on that from 2013 to 2018 noted swelling of the ankle. On page 32 in December of 2017, he is noted to have a normal gait although that probably was inconsistent with the other records; BMI of 45.7, weight 361 pounds. On page 36 in April of 2013, has bilateral ankle – custom ankle boots; on gabapentin and Cymbalta; absent superficial phlebitis on the left thigh. In June 2018 on page 33, clicking and ankle pain, no edema, BMI 45.6. 7F from 2018 to 2019, primary care doctor in December 2018 has tried to decrease sodium in his diet, decrease swelling of his ankles, BMI 43; increased gabapentin. On page – 7F, page 31, in 2019, now has insurance, referred to podiatrist; BMI 46.59; and then the podiatry visit. 17F, page 1, 7/2/20, wearing bilateral braces; physical exam tender at his tibial tendon; severe [pronation] on gait; left more than right; moderate decrease range of motion with edema; diagnosed with tibialis posterior dysfunction; [with] complete arch collapse, referred to Rush for surgery; then anticoagulation. 11F, page 30, April 2018, was a consult, he has severe radicular phlebitis; has prescribed compression stockings. So that's the only place I saw description of compression stockings with that consult. Oh, and then also primary care doctor, [18]F, page 35, 9/22/20, said doing pretty well with respect to pain and function on a day-to-day basis, but no physical exam with that. 18F, [ ] page 70, April 2021, doing fairly well with respect to pain; works four to five hours one day a week at Auto Zone.

R. 42-44.

In finding Dr. Frazin's opinion persuasive and adopting an RFC nearly identical to the one he outlined,[4] the ALJ provided the following explanation:

---

[4] The ALJ further restricted Plaintiff's RFC by finding him unable to operate foot controls and balance. R. 24.

The undersigned was persuaded by the opinions of Dr. Frazin who evaluated the claimant's abilities to perform work based on the longitudinal medical evidence and provided extensive support for his well-articulated opinion, as noted *supra*.[5] Further, Dr. Frazin's opinion overshadows the claimants' providers opinions contained in the record as the extreme limitations they opined were supported, in large part, on the claimant's subjective statements where Dr. Frazin cited the objective medical evidence to support the limitations he opined.

These expert opinions are in contrast to the Exhibits 2F, 3F, 8F, 9F, 10F, and 19F unpersuasive opinions of treating physician Dr. Dale Grey, MD[6] who provides more drastic limitations for our claimant, including restrictive sitting and reliability abilities. Many of the concerns of Dr. Grey concerning climbing ladders and walking on uneven surfaces have been factored in his patient's residual functional capacity. Also, Dr. Grey aptly points out that the claimant has no functional mental limitations. Dr. Grey does not narrate an appropriate medical basis for the claimant having to raise his legs while working, a necessity that both Dr. Munoz and Dr. Frazin reject. It is well established in medical science that elevation of legs is helpful to those afflicted with circulatory problems, but has no role in helping with the orthopedic ones like the claimant suffers from.

Dr. Frazin's opinion is the most persuasive of all because he had a complete record before him to support his views. We know that the claimant has significant problems with his ankles and obesity and these conditions have been taken seriously by the Administrative Law Judge. However, Dr. Grey does not give us any information that we can rely on for his reasons that a restrictive sedentary job is too much for his patient. Dr. Grey cites pain as a factor in functional compromise but he never addresses how the claimant is still able to carry on operating a lawn mower, a car, a boat, fish, and shop in stores.

---

[5] Referring to a summary of the evidence Dr. Frazin cited as follows:

> Dr. Frazin testified that, based on his review of the record, that he was no long term anticoagulation, but was not currently having any problems. He said that, despite his morbid obesity and ankle deformities, he did not meet or equal a listing. Dr. Frazin opined that the claimant could perform work under the residual functional capacity adopted by the instant decision. Dr. Frazin specifically cited that in 2013, the claimant was prescribed ankle braces and had an antalgic gait; he had stage III bilateral post tibial tendon dysfunction; his body mass index was 42.82, he had antalgic gait, and he used no assistive devices; x-ray of the right foot showed collapse of the arch; right ankle MRI showed synovitis and edema; in 2017, he had normal gait; in 2018, the claimant reported clicking and ankle pain, but there was no edema; in 2019, he was referred to a podiatrist, who noted tenderness and severe pronation, but moderate decreased range of motion with edema and complete arch collapse; and in April 2021, that his pain was managed.

R. 25.

[6] The record reflects a spelling of Dr. Dale Gray instead of "Grey."

R. 26-27.

Plaintiff makes several arguments attacking the ALJ's reliance on Dr. Frazin's opinion. However, all the arguments generally stem from Dr. Frazin and the ALJ's failure to explain how the medical evidence they cited supports their determination that despite Plaintiff's ankle deformity, he could perform full-time, sedentary work with certain restrictions.

Because Plaintiff's claim was filed after March 27, 2017, the ALJ was required to weigh Dr. Frazin's opinion under the regulations set out in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ must "articulate ... how persuasive" he finds "all of the medical opinions," and "explain how [he] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b), (b)(2). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ found Dr. Frazin's opinion, and RFC determination, the most persuasive in the record because Dr. Frazin reviewed the longitudinal record, and his opinion was well supported by the objective medical evidence. It is undisputed that Dr. Frazin had the entire medical record before him when he testified. However, the ALJ does not identify what evidence supports and is consistent with Dr. Frazin's opinion and does not otherwise provide substantial evidence for finding Plaintiff capable of full-time, sedentary work.

In crediting Dr. Frazin, the ALJ points to his summary of the medical records Dr. Frazin cited in his testimony. *See* R. 25. However, the ALJ merely summarizes medical records from 2013 through 2021 without explaining why this medical evidence supports Dr. Frazin's opinion and the RFC determination. Where Dr. Frazin also failed to explain why the medical evidence he cited supported his RFC determination, the ALJ's mere summary of the same evidence provides no further insight. *See Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion.").

Moreover, the majority of evidence the ALJ cites confirms the ALJ's finding that Plaintiff had "significant problems with his ankles." R. 27. The ALJ cited a 2013 x-ray and MRI showing a collapsed arch, synovitis, and edema. R. 25. The ALJ also cited to Plaintiff's ankle braces, antalgic gait, clicking and pain in his ankles, tenderness, and severe pronation. It is unclear why these records undermine Plaintiff's testimony that his ankle deformity causes severe pain when both sitting and standing, or Dr. Gray's opinion that Plaintiff could not sit with his knees underneath him for more than a few minutes and could stand, walk, and sit for less than 2 hours in an 8-hour workday. R. 645, 818.

The ALJ also cites to records reporting a normal gait, no edema, and that in April 2021 Plaintiff's "pain was managed." R. 25. But again, the ALJ gives no indication how these records were consistent with Dr. Frazin's opinion. And it is not clear from the records alone. Although the ALJ cited Plaintiff's normal gain in 2017, Dr. Frazin testified that this report was likely inconsistent with the evidence. R. 43. Additionally, a lack of edema does not seem determinative of Plaintiff's pain where he reported pain even without edema. *See, e.g.*, R. 532. Lastly, the

7

April 2021 office note reveals Plaintiff's continued reports of chronic ankle pain despite medications including a fentanyl patch every 2 days and Norco 7 times a day. R. 813.

Nevertheless, the Commissioner maintains that the ALJ "laid a clear logical bridge from this RFC assessment to the evidence." Def.'s Resp. at 2, Dkt. 17. The Commissioner argues that the ALJ properly found Dr. Frazin's opinion consistent with evidence of Plaintiff's improved symptoms with pain medications because Plaintiff had many normal examination findings and was able to continue with his normal daily activities.[7] Def.'s Resp. at 1-2, Dkt. 17.

The Commissioner first points to the ALJ's reliance on a June 2020 medical note where Plaintiff reported "doing fairly well overall," his pain was "controlled" with medications, and he was "able to continue his normal daily activities." R 25 (citing R. 760). However, neither the Commissioner nor the ALJ indicate that the note also reported edema, swelling, stiffness, and chronic pain to his ankles, and that his provider referred him to a podiatrist for symptom management. R. 760-62. The ALJ also fails to mention that after examining Plaintiff in July 2020, his podiatrist reported that Plaintiff suffered from a severe ankle deformity that will require "multiple areas of reconstruction" and referred Plaintiff to Rush hospital for surgery. R. 741.

In response to Dr. Frazin's inquiry at the hearing, Plaintiff confirmed that he did not proceed with the surgery, noting that the podiatrist did not call him back and that she was unsure what Rush was able to do for his ankles. R. 40. Dr. Gray also stated that Plaintiff "has been to multiple specialists including doctors in Rockford and in Madison, Wisconsin at the University of

---

[7] The Commissioner also argues that Dr. Frazin properly considered "the generally underwhelming nature of [Plaintiff's] treatment. Def.'s Resp. at 1, Dkt. 17. However, the Commissioner does not elaborate. Moreover, the ALJ did not rely on this reason to credit Dr. Frazin's opinion. Accordingly, the Court will not consider this argument because the Commissioner's "attempt to supply a post-hoc rationale" for the ALJ's decision "runs contrary to the *Chenery* doctrine" and is improper. *Lothridge v. Saul*, 984 F.3d 1227, 1235 (7th Cir. 2021); *see also Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.").

Wisconsin. None of them give him any hope of a reasonable outcome from surgery." R. 818. Nevertheless, Dr. Frazin and the ALJ again do not evaluate this evidence or acknowledge that even in continuing to manage his symptoms with high doses of fentanyl and Norco, he continued to have good and bad days. *See Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *3 (7th Cir. Mar. 15, 2023) (unpublished) (noting that "it is possible for a person to get some benefit from treatment yet not enough to be capable of more than part-time work") (internal quotation marks and citation omitted); *see, e.g.*, R. 512 (adding prescription for fentanyl after Plaintiff reported being in "misery all the time," noting that referral to specialist in Madison "didn't have much to offer in terms of his care"); R. 520 ("His right ankle is doing a lot better," but still noting good and bad days with pain); R. 526 ("He takes the same pain medications with the same relief. The pain is never completely gone."); R. 528 (noting good and bad days with ankle pain despite the use of ankle braces every day); R. 532 (Plaintiff reports that Norco "helps take the edge off the pain").[8]

The Commissioner also argues that Plaintiff's improvement is further shown by his ability to continue with his "normal daily activities" as reported in June 2020, and based on Plaintiff's function reports where he reported boating and fishing once per week. Def.'s Resp. at 4, Dkt. 17.

---

[8] In further support of the ALJ's decision to credit Dr. Frazin's opinion, the Commissioner cites to numerous medical records that neither Dr. Frazin, nor the ALJ, relied on, for the proposition that "Dr. Gray's physical examinations were unremarkable in comparison to his significant limitations." Def.'s Resp. at 4, Dkt. 17. Even considering the Commissioner's *post-hoc* rationale, the records the Commissioner cites as showing normal examinations include reports of tenderness in Plaintiff's arch that was swollen and painful, spasms in his ankle resulting in Dr. Gray increasing Plaintiff's dose of fentanyl, his foot being numb to the touch, and "clicking" in his ankle that was "quite painful." R. 522, 530, 532, 536. Again, neither the ALJ nor Dr. Frazin acknowledge these records or evaluate them in relation to the RFC determination. The Commissioner also makes a cursory argument that the frequency of Plaintiff's appointments between September 2013 to June 2018 is "debatable, showing several annual appointments." Def.'s Resp. at 4, Dkt. 17 (citing R. 499-537). Again, this rationale was not provided by the ALJ in crediting Dr. Frazin's opinion. Nevertheless, this Court's review of those records reveals that Plaintiff generally saw Dr. Gray approximately every 3 months for his chronic ankle pain and only had three instances where his follow-up appointment was longer than 3 months. Therefore, even considering the Commissioner's argument that the frequency of Plaintiff's appointments supports crediting Dr. Frazin over Dr. Grey, it is unsupported.

The ALJ characterized Plaintiff's activities in the function reports as "a fairly robust and functional lifestyle," citing to Plaintiff's ability to operate a riding lawn mower, a car, and a boat, and fish and shop in stores. R. 27. The ALJ also pointed to Plaintiff's ability to handle his own personal care needs, perform chores, handle his own financial transactions, and dine at restaurants. R. 25. The ALJ found that "[a]ll of these activities at minimum require a sedentary level of functioning." R. 25.

However, both the Commissioner and the ALJ failed to acknowledge that Plaintiff required assistance with many of his activities, along with breaks. For example, Plaintiff testified that it took him about three to four hours to cut half an acre with his riding lawnmower because he would take two or three breaks to elevate his legs. R. 86. Plaintiff also reported boating and fishing with the help of his friend, noting that he needed help launching his boat and "getting set to fish." R. 428. Plaintiff also noted that he would sit with his "legs out" but could not sit with his knees directly beneath him, which is consistent with Dr. Gray's opinion. R. 429. The ALJ also makes no attempt to explain why Plaintiff's activities undermine his reports of debilitating pain.

Additionally, Plaintiff's report in June 2020 that he was able to continue with "normal daily activities" gives no indication that his activities go beyond the reduced activities outlined in his function reports. Without more, the ALJ has not provided support for his finding that Plaintiff's activities are "inconsistent with a finding of disability." R. 25. "An ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotation marks and citation omitted).

For all these reasons, the Court finds that the ALJ failed to adequately explain the supportability and consistency of Dr. Frazin's opinion to support the RFC determination. There

10

are numerous records which tend to support Plaintiff's reports of ankle pain and related sitting and standing limitations. If the ALJ determined that these records were not inconsistent with Dr. Frazin's opinion, and the RFC determination, the ALJ should have explained his reasons in the decision. Overall, the ALJ's decision lacks sufficient analysis for the Court to determine how the ALJ credited the medical opinions and, in general, what led the ALJ, and Dr. Frazin, to impose the particular RFC limitations. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) ("[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [his] conclusions.") (internal quotation marks and citation omitted). If Plaintiff is unable to sit for six hours in an eight-hour workday or occasionally stoop, kneel, crouch, and crawl, he will be unable to perform the jobs identified by the ALJ. Accordingly, a remand is required for the ALJ to properly evaluate Dr. Frazin's opinion and provide substantial evidence to support the RFC determination. If additional limitations are not warranted based on Plaintiff's alleged symptoms and Dr. Gray's opinions, the ALJ must sufficiently explain his reasons.

In light of this Court's remand, it will not address Plaintiff's remaining arguments. However, on remand, it would be beneficial for the ALJ to consider whether a consultative examination is required to make an informed decision. Additionally, Plaintiff should ensure that he raises all his concerns with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: March 23, 2023      By: _____
                                                    Lisa A. Jensen
                                                    United States Magistrate Judge